**In the United States District Court
for the District of Massachusetts**

FILED
IN CLERKS OFFICE

2013 JUN 12  P 4: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

13-40072

| | |
|---|---|
| David Lynwood | } **Libel of Review** |
| | } |
| v. | } - common law counterclaim in admiralty - |
| | } - notice lis pendens and - |
| | } - Allocution Affidavit #11-40023 - |
| | } |
| Jacob J. LEW | } Re: God-given unalienable rights in the |
| | } original estate - Article III; Constitution |

**Comes now** David Lynwood of the TOPPIN family making a special visitation by absolute ministerial right to the district court, "restricted appearance" under Rule E(8). Jacob J. LEW has been making false claims and this counterclaim and notice lis pendens are now in the "exclusive original cognizance" of the United States through the district court - see the First Judiciary Act of September 24, 1789, Chapter 20, page 77.

**Jurisdiction**: In international law and according to the law of the land, agents of a foreign principal are required to file any pretended claim in the appropriate district court prior to exercising rights to that claim. The district courts have "exclusive original cognizance" of all inland seizures and this includes vessels in rem (Rule C(3)) such as trust organizations and legal names (David L. Toppin, DAVID LYNWOOD TOPPIN, Neil S. WOLIN, Henry Paulson, John Snow etc.)

> "...the United States, ... within their respective districts, as well as upon the high seas; (a) saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it; and shall also have exclusive original cognizance of all seizures on land,..." *The First Judiciary Act*; September 24, 1789; Chapter 20, page 77. *The Constitution of the United States of America*, Revised and Annotated - Analysis and Interpretation - 1982; Article III, §2, Cl. 1 *Diversity of Citizenship*, U.S. Government Printing Office document 99-16, p. 741.

This fact of protocol - filing a claim in district court according to international law - is beyond dispute and extends into antiquity: "Meanwhile those who seized wreck ashore without a grant from the Crown did so at their peril." *Select Pleas in the Court of Admiralty*, Volume II, A.D. 1547-1602; Introduction - Prohibitions, *Note as to the early Law of Wreck*, Selden Society, p. xl, 1897. Even the IRS recognizes the protocol:

> "**Place for filing notice; form**. Place for filing. The notice referred to in subsection (a) shall be filed -- with the clerk of the district court. In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated..." Title 26 U.S.C. §6323.

Jacob J. LEW, acting as "City METRO officer – US Governor for the International Monetary Fund" *city* of Washington, *District* of Columbia is agent of a foreign principal, a "foreign state" defined at Title 28 of the United States Codes §1603, and Title 22 U.S.C. §611 the **Division of enforcement** for the **Department of revenue** (for example C.R.S. §24-1-117 [Colorado]) under principal State Governor in convention with METRO organization a.k.a. *Public Administrative Services Headquarters* (PASHQ - signed for example by Edwin C. Johnson by John T. Bartlett; *The Public Papers and Addresses of Franklin D. Roosevelt, The Year of Crisis 1933* Random House p. 21.) The *Department of Revenue* of course being the execution of bankruptcy proceedings against the citizens of the United States since 1933 currently formed "International Monetary Fund" and "World Bank" etc. - the State, City METRO municipal and police powers under United Nations charter law - protected by the same alleged positive law jural society (international treaty) exemptions home rule (of for example, Article VI and Article XX of the *State of Colorado* Constitution, "**Transfer of government.**")

The district court for the District of Massachusetts has acquired exclusive original cognizance of this counterclaim for the United States because this is a federal question - a Constitutional matter involving a man on the land complaining about theft and kidnap - Title 18 U.S.C. §§ 661 and 1201 respectively and irregular extradition from the asylum state into the United States custody, treason - Constitution, Article III §3 and Title 18 U.S.C. §2381 by an agent of a foreign principal, creating diversity of citizenship - Title 28 U.S.C. §§1331 and 1333 respectively. The presentments (notification) are arbitrary and capricious clearly implying that if David Lynwood fails to comply with the suggested terms there will be "law enforcement" actions by way of inland seizure. Speaking historically, the districts, formed in 1790 for handling the financial obligations of the United States could not come into existence until after formal expression of remedy in the 'saving to suitors' clause (1789) quoted above and codified at Title 28 U.S.C. §1333. The law is paraphrased in the Internal Revenue Codes:

> "Form. The form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary. Such notice **shall be valid notwithstanding any other provision of law** regarding the form or content of a notice of lien." Title 26 U.S.C. §6323(F)(3). *emphasis added*

The only excuse for the discretionary authority granted administrative agencies is the judicial oversight demonstrated in this invocation of an Article III court.

**Law of the flag**: Man is created in the image of God and to reduce a man to chattel against the national debt is an affront to God. Exodus 13:16 and Genesis 1:27.

## Cause of action

This cause of action is two-fold. For one, this cause of actions lodges a formal accusation against the US Governor for the International Monetary Fund – by whatever name (Jacob J. LEW acting as Secretary) for fraud by omission. Social conditioning would have it that well into a career life one might discover that remedy was written into the 'saving to suitors' clause of 1789 and the Federal Reserve Act of 1913, long after being trained to blindly endorse the naked contract on the backside of paychecks. This fraud by omission is genius in that one cannot sue their civics teacher, their parents or the bank teller saying so, misinforming people daily out of ignorance. Fraud vitiates all contracts ab initio, from conception so there is no cause by the prosecution in Criminal Case #11- 40023 as reflected in the Indictment being unsealed. Therefore this counterclaim is fluff to lodge this accusation as allocution into that criminal case and conviction prior to sentencing. This presumption is erroneous and based upon endorsements of private credit from the Federal Reserve that have never been made in good faith. The subjection to Special Drawing Rights (Paper Gold) is one thing but presuming endorsement of fractional lending practiced outside the scope of lawful money is unlawful and such presumption is defeated by law herein, *nunc pro tunc*. See Title 12 U.S.C. §411; David Lynwood is and always would have exercised right to handle lawful money had the option ever been presented in good faith. Any contract based in endorsement is naked and void any consideration; therefore it is invalid. The subject presentment utilized for the claim was regular enough but David Lynwood wishes to invoke judicial review "any other provision of law" and nullify any justification for any further such theft action - manifest in actual or threatened kidnap. The presentment(s) upon which the theft is based has been refused for cause timely (considering preparation of proper remedy) and the red ink original refusal for cause has been returned to Jacob J. LEW in his copy of the counterclaim and summons. All other copies and the original counterclaim filed with the court have black ink (copy) refusals for cause on the presentment(s).

Secondly, this Libel of Review is an integral part of the Allocution Affidavit of David Lynwood TOPPIN as described in the Header.

## NOTICE

The Secretary of Treasury is being served this summons as the US Governor for the International Monetary Fund and will be held to respond as an agent of a foreign principal – the IMF being a sub-organ of the United Nations. Accordingly Jacob J. LEW is expected to respond to this counterclaim in twenty-one (21) days.

## Stipulation of acceptable answer

The issue is simple. Agents of a foreign principal are required to file their complaint in the appropriate district court prior to exercising any claim against a man on the land. This is international and common law. The attached *Indictment* at the basis of Criminal Action #11-40023 against David Lynwood remains unsealed and is therefore bogus. Jacob J. LEW must directly address the validity of the (telephone) certificate of search that clearly shows there have been no claims filed against "David Lynwood" or any pseudonym through which David Lynwood may be engaged in contract. The court clerk James R. Manspeaker (District of Colorado subsequently replaced by Gregory Langham) obfuscated remedy by denying proper certificates so Jacob J. LEW and anyone else for that matter can easily research case history against David Lynwood or any legal name. Jacob J. LEW may call (647) 748-9152 to conduct searches and of course the Article III judge can research cases in chambers. It is however reasonable to say that if the Jacob J. LEW is moving on a valid claim and judgment in the district court then the Jacob J. LEW knows what case that is.

The United States is not a party in interest to this action. Any registered attorney responding for Jacob J. LEW cannot be a citizen of the United States due to the *de jure* Thirteenth Amendment of the Constitution. A certified copy is attached and fully incorporated into this counterclaim. (The federal judge assigned this case is competent to adjudicate under Article III due to "inactive" status with the State Supreme Court attorney register.) Addressing the certificate of search is the only response that will be considered an answer to this counterclaim. Failure to answer will be met with default judgment for David Lynwood according to the notice on the face of the summons.

## Stipulation of remedy

The recourse sought is immediate exclusive original cognizance of the United States through the district court. This case is repository for evidence for injunctive relief from any future presentments and theft or kidnap actions from *any* foreign agents or principals. Though the theft/kidnap could be justified by notice and sophistry under the color of law of municipal structure, the proceedings have obviously

been under the pretended authority of unconscionable contract and the recourse requested is proper. There is no excuse for the arbitrary and capricious attorney actions - **debt action in assumpsit** - that have confronted good men and women since the Banker's Holiday. Roosevelt implemented a "voluntary compliance" national debt (upon the States by Governor's Convention) but utilized the 1917 *Trading with the Enemy Act* to compel citizens of the United States to comply. The substitution of *citizen of the United States* for the German nationals on this land was against *Stoehr v. Wallace*, 255 U.S. 239 (1921) where the Court clearly expresses "The Trading with the Enemy Act, originally and as amended, is strictly a war measure..." - directly citing the Constitution Article I, §8, clause 11. The war on the Great Depression 1) does not count and 2) would only last the duration of the emergency if it did. Presentments will be treated as described by the following example of clerk instruction:

**David Lynwood**
**465 Salisbury Street**
**Holden, Massachusetts.**
**[01520]**

United States District Court                                    Registered mail # RA XXX XXX XXX US
for the District of Massachusetts
1 Courthouse Way
Boston, Massachusetts.
                [02210]

Dear clerk;

        Please file this refusal for cause in the case jacket of Article III case 03-XXXX. This is evidence if this presenter claims I have obligations to perform or makes false claims against me in the future. A copy of this instruction has been sent with the original refusal for cause back to the presenter in a timely fashion.

**Certificate of Mailing**

        My signature below expresses that I have mailed a copy of the presentment, refused for cause with the original clerk instruction to the district court and the original presentment, refused for cause in red ink and a copy of this clerk instruction has been mailed registered mail as indicated back to the presenter within a few days of presentment.

                        *example*
                        David Lynwood

Presenter's name                                              Registered mail # RA XXX XXX XXX US
Address
Anywhere, State.
            [presenter's code]

Jacob J. LEW and all principals and agents are hereby properly notified. There is no governmental immunity to cover "law enforcement officers" who choose to interfere with our rights to the land and violators will be arrested by the U.S. Marshal according to Rule C of the *Supplemental Rules for Certain Admiralty and Maritime Claims*. Jacob J. LEW and all principals and agents are left with their remedy:

**COURTS OF THE UNITED STATES** ... 136. When a seizure has been voluntarily abandoned, it loses its validity, and no jurisdiction attaches to any court, unless there be a new seizure. 10 Wheat. 325; 1 Mason, 361. *First Judiciary Act*, September 24, 1789. *Bouvier's Law Dictionary* 1856.

Upon offense by hostile presentment after the inevitable default by Jacob J. LEW (including all agents, principals and any and all offensive presentments), after fair notice by refusal for cause like the above clerk instruction a certificate of exigent circumstances will be issued pursuant to Rule $C(3)(a)(ii)(B)$ *Arrest Warrant* and the clerk will immediately issue an arrest warrant for Jacob J. LEW or named agent or principal to be taken into custody for the violations of law. Presentments of any kind from Jacob J. LEW or any agent acting for the bankruptcy of the United States through the District may be considered hostile threat of seizure.

### Stipulation regarding character and residential address

The use of a residential address is by right. All 'privileges' associated with postal delivery are compensated, usually prepaid in honestly won U.S. currency. David Lynwood is not Pro Se and is not representing himself. The clerk shall not change the name of this suit on the docket from the name on the filing fee receipt. David Lynwood retains the unalienable right to hold the district court clerk to the obligations to perform of file clerk for the United States working in the United States Courthouse. This includes the expectation that if and when this cause reaches default judgment against the Jacob J. LEW, the default judgment will be filed in full cognizance of the United States and will appear on the docket as "Default judgment for the plaintiff." David Lynwood is authorized by fidelity bond to file default judgment in lieu of district court action. Any such judgment will stand on the truth for validity. Any character assassination will activate Instrumentality Rule and pierce the corporate veil of the United States and all agencies. Usage of residential address is non-assumpsit and changes David Lynwood's character not in the least:

The privilege against self-incrimination is neither accorded to the passive resistant, nor the person who is ignorant of his rights, nor to one indifferent thereto. It is a fighting clause. Its benefits can be retained only by sustained combat. **It cannot be claimed by attorney or solicitor.** It is valid only when insisted upon by a belligerent claimant in person. Quote from federal judge Lee in *United*

*States v. Johnson et al.* No. 11400, Middle District of Pennsylvania, 76 R. Supp. 538; 1947 U.S. Dist. LEXIS 3057, February 26, 1947. *emphasis added*

The highlighted bold sentence in the above quote admonishes against any clerk action that falsely brands David Lynwood Pro Se - to imply that David Lynwood is representing himself before the district court. David Lynwood is responsible asylum state visiting his judiciary under Rule E(8). If an Article I (active attorney) "judge" is assigned this case or the Article III judge chooses to protect the fiduciary interests of the Bank and Fund, to act as an attorney under Article I, maintain silence. The cash filing fee is fully paid in public money and not in private credit (US notes in the form of Federal Reserve notes). The funds were redeemed lawful money according to the US Supreme Court's interpretation of the Congress' definition from **US v Rickman; 638 F.2d 182**

> *In the exercise of that power Congress has declared that Federal Reserve Notes are legal tender and <u>are redeemable</u> in lawful money.* And, **US v Ware; 608 F.2d 400**

> <u>*United States notes shall be lawful money*</u>*, and a legal tender in payment of all debts, public and private, within the United States, except for duties on imports and interest on the public debt.*

Any presumptions made about the funds for this filing fee are that David Lynwood has already exercised entitlement to redeem any Federal Reserve Bank notes tendered as legal tender for all debts public and private. Furthermore any and all funds discussed have been in redemption of Federal Reserve Bank notes, not endorsement thereof:

> "BANKRUPTCY. The state or condition of a bankrupt.
> 2. Bankrupt laws are an encroachment upon the common law. The first in England was ..."
> *Bouvier's Law Dictionary* 1856.

All testimony will be without immunity - **piercing the corporate veil and Instrumentality Rule**. David Lynwood is a man with God-given unalienable rights, one living and regenerate entity of sound mind and body. For some realistic perspective the Credit River Money Decision is attached and fully incorporated into this counterclaim. Jacob J. LEW is clearly the debtor and David Lynwood is clearly creditor. David Lynwood is framing the accusation of fraud by omission in that if David Lynwood had known about redeeming lawful money in good faith David Lynwood would have been doing so since David Lynwood's first paycheck ever!

### No magistrates

No one may handle this case but an Article III judge. The nature of this cause is injunctive relief, albeit preemptive. Title 28 U.S.C. §636(b)(1)(A) cannot ensue, "...except a motion for injunctive relief..."

attachments fully incorporated:

1) Certificate of search on "David Lynwood" from clerk of the district court is exempted due to falsifications by district court clerk James R. Manspeaker on such certificates. Jacob J. LEW is provided with information to check for case histories

2) presentment from Jacob J. LEW on or around 6/1/11 titled "INDICTMENT" refused for cause. The red ink original refusal is in the counterclaim served upon Jacob J LEW . The original counterclaim filed in the district court has a copy of this same refusal. A brief memorandum titled *DEMAND TO DISMISS FOR IMPROPER INDICTMENT*, standing on Title 28 USC §1691 about bogus, unsealed court process accompanies this R4C. Additionally there is an accompanying *Notice and Demand* standing on the general redemption model found in the Federal Reserve Act for lawful money with non-endorsed paychecks as evidence.

3) A certified copy of Title 12 U.S.C. §411 published at El Paso County Clerk and Recorder Reception #207015932

4) certified copy of the *de jure* Thirteenth Amendment to the Constitution published at El Paso County Clerk and Recorder Reception #95110459

5) certified copy of the Credit River Money Decision published at the El Paso County Clerk and Recorder Reception #203290555

6) Payment (not discharge) of the filing fee is in lawful money. "Pay to the Order of_____". associated with the US court filing fee has been attached.

465 Salisbury Street
Holden, Massachusetts [01520]

## Addresses

United States District Court
for the District of Massachusetts
1 Courthouse Way
Boston, Massachusetts.
[02210]

(617) 748-9152

David Lynwood
465 Salisbury Street
Holden, Massachusetts [01520]

(978) 669-0060

Jacob J LEW
1500 Pennsylvania Avenue NW
city of Washington, District of Columbia.
[20220]

(202) 622-2000

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 11CR40023FDS |
| v. ) | |
| ) | VIOLATIONS: |
| DAVID L. TOPPIN, ) | 18 U.S.C. § 7201    (Tax Evasion) |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges:

### Introduction

At all times material to this Indictment:

1.     Defendant DAVID L. TOPPIN ("TOPPIN") resided in Massachusetts.

2.     TOPPIN was the president and sole owner of Pelletizer Group, Inc., located in Massachusetts.

3.     TOPPIN was the sole owner of an Amway distributorship called Toppin Enterprises, located in Massachusetts.

### Assessment of Income Taxes for 1997-1999

4.     TOPPIN did not file federal income tax returns for tax years 1997, 1998, and 1999 when those returns were due by April 15 of 1998, 1999, and 2000 respectively, nor did TOPPIN seek an extension of the filing deadline.

5.     As of April 15, 1998, TOPPIN owed federal income taxes for 1997. As of April 15, 1999, TOPPIN owed federal income taxes for 1998. As of April 15, 2000, TOPPIN owed federal income taxes for 1999.

6.      On or about December 14, 2006, TOPPIN filed delinquent federal income tax returns reflecting adjusted gross income of $266,332 in 1997, $402,563 in 1998, and $58,806 in 1999. The returns reflected that TOPPIN owed $86,909 in taxes for 1997, $139,208 for 1998, and $1,082 for 1999. TOPPIN has never paid any of this money.

### Evasion of Payment of Taxes for 1997-1999

7.      In or about April 1998, TOPPIN received a completed 1997 federal income tax return prepared for TOPPIN and his wife by P.S., a professional tax preparer and Certified Public Accountant. The return represented that in 1997 TOPPIN and his wife earned adjusted gross income of $274,166, and owed federal income taxes of $78,676. On or about May 11, 1998, TOPPIN signed the return and submitted it to a mortgage lender in support of a loan application. TOPPIN never filed the signed return with the Internal Revenue Service ("IRS"). On the mortgage application TOPPIN represented that his net worth was $2,437,639.12.

8.      In or about April 1998, TOPPIN asked P.S. to look into offshore trusts, a common device for concealing income and assets from tax authorities. P.S. declined to do so.

9.      In or about 2002, TOPPIN caused real estate to be transferred from his name alone to his wife's name alone. Specifically, prior to July 24, 2002, TOPPIN and his wife lived at 483 Phinney's Lane in Centerville, Massachusetts, which TOPPIN owned in his name alone. On or about July 24, 2002, TOPPIN transferred the property to himself and his wife, to hold as tenants by the entirety, for $1.00. That same day, TOPPIN and his wife sold the house for $1,200,000. TOPPIN used some of the proceeds from the sale to pay off his mortgage. On or about August 12, 2002, most of the remaining proceeds from the sale were used to buy TOPPIN's new primary residence, located at 465 Salisbury Street in Holden, Massachusetts, for $540,000. TOPPIN caused the Holden property to be purchased in his wife's name alone.

2

10.     In or about 2002-2003, TOPPIN closed, or caused to be closed, checking accounts held jointly by TOPPIN and his wife, and opened, or caused to be opened, new checking accounts held in his wife's name alone, which TOPPIN then used for some or all of the same purposes for which the joint accounts had been used.

11.     Specifically, in 2002 and 2003, TOPPIN closed, or caused to be closed, four checking accounts that TOPPIN and his wife held jointly at Rockland Trust. Also in 2002 and 2003, TOPPIN opened, or caused to be opened, four checking accounts at Clinton Savings Bank, which were then used between 2002 and 2009, for many of the same purposes for which the Rockland Trust accounts had been used. Only one of the Clinton Savings Bank accounts was held jointly by TOPPIN and his wife; the other three were opened in TOPPIN's wife's name only.

12.     In 2002-2009 the balance in the only joint account held by TOPPIN and his wife at Clinton Savings Bank never exceeded $2,653.44. However, the balance in one of the Clinton Savings Bank accounts held in TOPPIN's wife's name alone was as high as $266,699.12.

13.     On many occasions between on or about November 18, 2002 and on or about December 31, 2007, TOPPIN signed checks from the three Clinton Savings Bank accounts held in his wife's name alone, for a variety of household and personal expenses as well as expenses related to Toppin Enterprises.

14.     On many occasions between on or about October 31, 2002 and on or about December 31, 2007, TOPPIN endorsed checks that he received, payable to himself, and deposited those checks into Clinton Savings Bank accounts held in his wife's name alone. These included a CompassBank check for $100,000 made payable to TOPPIN only, which TOPPIN endorsed over to his wife and deposited on or about October 30, 2002.

3

15.    On or about December 20, 2004, TOPPIN made false and/or misleading statements to the IRS about the extent of his assets and income, when he signed a Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals) under penalty of perjury and filed it with the IRS. For example, on the form TOPPIN represented that he did not operate a business, when in fact he operated both Pelletizer Group, Inc. and Toppin Enterprises. He also represented that his monthly income was only $4,666. In actuality, in 2004 TOPPIN earned net monthly profit of $6,822 from Pelletizer Group, Inc. and net monthly profit of $377 from Toppin Enterprises, for a monthly total of $7,199.

16.    On various dates between 2002 and 2007, TOPPIN paid other creditors, including for vacations and credit card bills, but did not pay the IRS.

4

## COUNT ONE
### (Tax Evasion – 26 U.S.C. § 7201)

17.    The Grand Jury realleges and incorporates by reference paragraphs 1-16 of this Indictment and further charges that:

18.    Beginning in or about April 1998 and continuing until on or about December 31, 2007, at Holden in the District of Massachusetts and elsewhere,

### DAVID L. TOPPIN,

defendant herein, did willfully attempt to evade and defeat the payment of a substantial amount of income tax due and owing by him to the United States of America for each of calendar years 1997, 1998, and 1999 by failing to make an income tax return on or before April 15 of each following year, as required by law, to any proper officer of the Internal Revenue Service; by failing to pay to the Internal Revenue Service the income taxes owed for those years; by concealing and attempting to conceal from all proper officers of the Internal Revenue Service his true and correct assets and income; and by making false and misleading statements to officers of the Internal Revenue Service about his assets and income.

All in violation of Title 26, United States Code, Section 7201.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

CHRISTINE J. WICHERS
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS, June ___, 2011

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

6

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff | )     CRIMINAL NO. |
| | )     4:11-CR-40023 |
| v. | ) |
| | ) |
| DAVID L TOPPIN | ) |
| | ) |
| | ) |
| _____ | ) |

**DEMAND TO DISMISS FOR IMPROPER INDICTMENT**

COMES NOW David Lynwood Toppin, Sui Juris, Citizen of Massaachusetts state, expressly not a citizen of the United States ("federal citizen"), and alleged Defendant  in  the  above entitled  matter (hereinafter "Defendant"), to move this honorable Court to dismiss the instant case with prejudice, due to improper indictment on which the instant case is premised, and to provide formal Notice to all interested party(s) of same.

    This honorable Court will please take formal judicial Notice of the fact that Defendant is  not a bar-licensed attorney, and has not had the advantage(s) of formal education in an accredited law school. For this reason, Defendant must learn and digest the particulars of law and procedure independently, as time permits.

**28 United States Code 1691** "Seal and teste of process" states:

"All writs and process issuing from a court of the United States shall be under the seal of the court and signed by the clerk thereof."

The government send alleged defendant an alleged "INDICTMENT" – see Exhibit A attached to this filing– purporting to charge alleged defendant with one count of Tax Evasion in violation of 18 USC 7201 (sic).  The indictment is lacking in the required seal of the court, which is a defect

that cannot be corrected and deprives this honorable court of jurisdiction in the instant matter.

The Court also sent an alleged "summons" for the alleged defendant to appear before "US Magistrate Judge" on June 17, 2011 – see attached Exhibit B– which is unsigned by ANY Judge or Clerk of Court AND also does not bear the required seal of the court, again pursuant to 28 USC 1691, rendering it a nullity and again depriving this honorable court of jurisdiction.

**Government's failure to serve defendant with signed and sealed summons** could not be regarded as mere oversight warranting perfunctory amendment; **in light of Government's apparent disregard for requirements of rules, summons would not be amended *nuncpro tunc*** to conform to the rules.

> [U.S. v. National Muffler Mfg., Inc.]
> [125 F.R.D. 453 (N.D. Ohio 1989)]
> [emphasis added]

A summons, or notice to the defendant, for the commencement of a suit, is certainly process, quite as much as a *capias* or a subpoena to appear and answer is process. **The statute intends that all process shall issue from the court**, where such process is to be held to be the action of the court, and that **the evidence that it issues from the court and is the action of the court shall be the seal of the court and the signature of the clerk**. ... In courts of the United States a summons cannot be amended by subsequent addition of the signature of the clerk, and the seal of the court. Citing Peaslee v. Haberstro, 15 Blatchf. 472.

> [Dwight v. Merritt, 4 F. 614, 615]
> [hns. 1 and 2, (C.C. D. NY 1880)]
> [cited favorably in Chisholm v. Gilmer]
> [299 U.S. 99 (1936), emphases added]

All writs and process issuing from the courts of the United States shall be under the seal of the court from which they issue, and shall be signed by the clerk thereof.

> [Middleton Paper Co. v. Rock River Paper Co.]
> [19 F. 252, hn. 1 (C.C. W.D. Wisconsin 1884)]
> [emphasis added]

<u>Seal is required</u> to be affixed by commissioner of circuit court to warrant issued by him to procure arrest for preliminary examination of defendant charged with crime in violation of penal statutes of United States.

[<u>Clough v. U.S.</u>, 47 F. 791, 795]
[hn. 6 (C.C. W.D. Tennessee 1891)]
[emphasis added]

In <u>Peaslee v. Haberstro</u>, 15 Blatchf. 472, Fed.Cas. No. 10,884, the summons was set aside because not under the <u>seal of court</u> or <u>signature of clerk</u>. ... To my mind, <u>the word "process,"</u> as used in Rev. St. § 911, <u>means an **order of court**</u>, although it may be issued by the clerk.

[<u>Leas & McVitty v. Merriman</u>, 132 F. 510, 511-513]
[(C.C. D. Virginia 1904), emphases added]

... [A]nd the notice referred to is the usual process and subpoena in equity of statute and rules ... necessarily under the **seal of the court**, and **signed by its clerk**. ... <u>Such subpoena was not published herein, and so **jurisdiction of defendant was not acquired.**</u>

[<u>United States v. Sharrock</u>, 276 F. 30]
[(**DCUS** Montana 1921), emphases added]

It will not be denied that <u>a writ is a mandatory precept issued by a court</u>, commanding the person to whom it is addressed to do or refrain from doing some act therein specified. Because it is a mandatory, and issued by a court, <u>it is an **order of the court**</u>. ... A subpoena is a writ or process, and is mandatory in nature, being a positive command. ... <u>In some of the states statutes may permit a summons or a subpoena to be issued by an attorney</u>, but **such statutes do not apply to proceedings in federal courts.**

[<u>*In re* Simon</u>, 297 F. 942, 944-946]
[(2nd Cir. 1924), emphases added]

**Without personal service of process in accordance with rule [4]**, or the law of the State in which the suit is filed, **<u>a federal district court is without jurisdiction to render a personal judgment against a defendant</u>**.

[<u>Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc.</u>]
[240 F.2d 814 (5th Cir. 1957), emphases added]

Inasmuch as <u>all writs and processes issuing from a court of the United</u> <u>States</u> **<u>are required, by statute, to be under seal of court and signed</u>** **<u>by clerk thereof</u>**, an injunction signed only by deputy clerk of district court is not void for want of a judicial signature.

> [<u>Scanbe Mfg. Co. v. Tryon</u>, 400 F.2d 598]
> [hn. 1 (9th Cir. 1968), emphases added]

In order for there to be *in personam* jurisdiction, there must be valid service of process.

> [<u>Attwell v. LaSalle Nat. Bank</u>]
> [607 F.2d 1157 (5th Cir. 1979)]

**There must be compliance** with terms of rule governing service of process and, absent waiver, **<u>incomplete or improper serice will lead</u>** **<u>court to dismiss action</u>**.

> [<u>Gibbs v. Hawaiian Eugenia Corp.</u>]
> [581 F.Supp. 1269 (S.D.N.Y. 1984)]
> [emphases added]

NOTE WELL that the failure to satisfy 28 U.S.C. 1691

**DEPRIVES THE COURT OF JURISDICTION** and,

<u>without jurisdiction the "magistrates" and "judges"</u>

<u>are PERSONALLY liable to all Parties</u> for all

consequential damages *e.g.* false imprisonment!!

See <u>Stump v. Sparkman</u>;  18 U.S.C. 1962 (racketeering)

_____
David Lynwood TOPPIN, All Rights Reserved
465 Salisbury Street
Holden, Massachusetts
**without** the United States
per 28 USC §1746

**<u>I declare under penalty of perjury under the laws of the United States of</u>** **<u>America that the foregoing is true and correct.    28 USC §1746</u>**

## CERTIFICATE OF SERVICE

I certify that on October 22, 2012 a copy of this pleading was filed with the Clerk of Court of the United States District Court for the District of Massachusetts (Worcester). Notice of this filing will be sent automatically by the PACER system to all interested parties

Christine J. Wichers
Office of the U.S. Attorney
1 Courthouse Way Suite 9200
Boston, MA 02210

David Lynwood Toppin, All Rights Reserved
465 Salisbury Street
Holden, Massachusetts
**without** the United States
                    per 28 USC §1746

**EXHIBIT A.**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | CRIMINAL NO. 11CR40023FDS |
| )  v.  ) | VIOLATIONS: |
| DAVID L. TOPPIN,  ) | 18 U.S.C. § 7201    (Tax Evasion) |
| )  Defendant.  ) | |

## INDICTMENT

The Grand Jury charges:

### Introduction

At all times material to this Indictment:

1.    Defendant DAVID L. TOPPIN ("TOPPIN") resided in Massachusetts.

2.    TOPPIN was the president and sole owner of Pelletizer Group, Inc., located in

Massachusetts.

3.    TOPPIN was the sole owner of an Amway distributorship called Toppin

Enterprises, located in Massachusetts.

### Assessment of Income Taxes for 1997-1999

4.    TOPPIN did not file federal income tax returns for tax years 1997, 1998, and

1999 when those returns were due by April 15 of 1998, 1999, and 2000 respectively, nor did

TOPPIN seek an extension of the filing deadline.

5.    As of April 15, 1998, TOPPIN owed federal income taxes for 1997. As of April

15, 1999, TOPPIN owed federal income taxes for 1998. As of April 15, 2000, TOPPIN owed

federal income taxes for 1999.

6.     On or about December 14, 2006, TOPPIN filed delinquent federal income tax returns reflecting adjusted gross income of $266,332 in 1997, $402,563 in 1998, and $58,806 in 1999. The returns reflected that TOPPIN owed $86,909 in taxes for 1997, $139,208 for 1998, and $1,082 for 1999. TOPPIN has never paid any of this money.

### Evasion of Payment of Taxes for 1997-1999

7.     In or about April 1998, TOPPIN received a completed 1997 federal income tax return prepared for TOPPIN and his wife by P.S., a professional tax preparer and Certified Public Accountant. The return represented that in 1997 TOPPIN and his wife earned adjusted gross income of $274,166, and owed federal income taxes of $78,676. On or about May 11, 1998, TOPPIN signed the return and submitted it to a mortgage lender in support of a loan application. TOPPIN never filed the signed return with the Internal Revenue Service ("IRS"). On the mortgage application TOPPIN represented that his net worth was $2,437,639.12.

8.     In or about April 1998, TOPPIN asked P.S. to look into offshore trusts, a common device for concealing income and assets from tax authorities. P.S. declined to do so.

9.     In or about 2002, TOPPIN caused real estate to be transferred from his name alone to his wife's name alone. Specifically, prior to July 24, 2002, TOPPIN and his wife lived at 483 Phinney's Lane in Centerville, Massachusetts, which TOPPIN owned in his name alone. On or about July 24, 2002, TOPPIN transferred the property to himself and his wife, to hold as tenants by the entirety, for $1.00. That same day, TOPPIN and his wife sold the house for $1,200,000. TOPPIN used some of the proceeds from the sale to pay off his mortgage. On or about August 12, 2002, most of the remaining proceeds from the sale were used to buy TOPPIN's new primary residence, located at 465 Salisbury Street in Holden, Massachusetts, for $540,000. TOPPIN caused the Holden property to be purchased in his wife's name alone.

2

10.     In or about 2002-2003, TOPPIN closed, or caused to be closed, checking accounts held jointly by TOPPIN and his wife, and opened, or caused to be opened, new checking accounts held in his wife's name alone, which TOPPIN then used for some or all of the same purposes for which the joint accounts had been used.

11.     Specifically, in 2002 and 2003, TOPPIN closed, or caused to be closed, four checking accounts that TOPPIN and his wife held jointly at Rockland Trust. Also in 2002 and 2003, TOPPIN opened, or caused to be opened, four checking accounts at Clinton Savings Bank, which were then used, between 2002 and 2009, for many of the same purposes for which the Rockland Trust accounts had been used. Only one of the Clinton Savings Bank accounts was held jointly by TOPPIN and his wife; the other three were opened in TOPPIN's wife's name only.

12.     In 2002-2009 the balance in the only joint account held by TOPPIN and his wife at Clinton Savings Bank never exceeded $12,653.44. However, the balance in one of the Clinton Savings Bank accounts held in TOPPIN's wife's name alone was as high as $266,699.12.

13.     On many occasions between on or about November 18, 2002 and on or about December 31, 2007, TOPPIN signed checks from the three Clinton Savings Bank accounts held in his wife's name alone, for a variety of household and personal expenses as well as expenses related to Toppin Enterprises.

14.     On many occasions between on or about October 31, 2002 and on or about December 31, 2007, TOPPIN endorsed checks that he received, payable to himself, and deposited those checks into Clinton Savings Bank accounts held in his wife's name alone. These included a CompassBank check for $100,000 made payable to TOPPIN only, which TOPPIN endorsed over to his wife and deposited on or about October 30, 2002.

3

15.     On or about December 20, 2004, TOPPIN made false and/or misleading

statements to the IRS about the extent of his assets and income, when he signed a Form 433-A

(Collection Information Statement for Wage Earners and Self-Employed Individuals) under

penalty of perjury and filed it with the IRS. For example, on the form TOPPIN represented that

he did not operate a business, when in fact he operated both Pelletizer Group, Inc. and Toppin

Enterprises. He also represented that his monthly income was only $4,666. In actuality, in 2004

TOPPIN earned net monthly profit of $6,822 from Pelletizer Group, Inc. and net monthly profit

of $377 from Toppin Enterprises, for a monthly total of $7,199.

16.     On various dates between 2002 and 2007, TOPPIN paid other creditors, including

for vacations and credit card bills, but did not pay the IRS.

4

### COUNT ONE
(Tax Evasion – 26 U.S.C. § 7201)

17.    The Grand Jury realleges and incorporates by reference paragraphs 1-16 of this Indictment and further charges that:

18.    Beginning in or about April 1998 and continuing until on or about December 31, 2007, at Holden in the District of Massachusetts and elsewhere,

### DAVID L. TOPPIN,

defendant herein, did willfully attempt to evade and defeat the payment of a substantial amount of income tax due and owing by him to the United States of America for each of calendar years 1997, 1998, and 1999 by failing to make an income tax return on or before April 15 of each following year, as required by law, to any proper officer of the Internal Revenue Service; by failing to pay to the Internal Revenue Service the income taxes owed for those years; by concealing and attempting to conceal from all proper officers of the Internal Revenue Service his true and correct assets and income; and by making false and misleading statements to officers of the Internal Revenue Service about his assets and income.

All in violation of Title 26, United States Code, Section 7201.

5

A TRUE BILL

FOREPERSON OF THE GRAND JURY

CHRISTINE J. WICHERS
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS, June ___, 2011

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

### SUMMONS IN A CRIMINAL CASE

UNITED STATES OF AMERICA

v.                                                        CRIMINAL NO.
                                                          11-40023-FDS

DAVID L. TOPPIN
465 SALISBURY STREET
HOLDEN, MA 01520

YOU ARE HEREBY SUMMONED to appear before the U.S. Magistrate Judge at the time, date
and place set forth below for an **Initial Appearance and Arraignment.**

PLACE:
U.S. DISTRICT COURT       **COURTROOM #16, 5th FLOOR**
**1 Courthouse Way**          DATE AND TIME:
**BOSTON**, MA 02210          **July 13, 2011, at 2:00 p.m.**

To answer a **Criminal Indictment**, charging you with a violation of TITLE 26, USC Section
7201

Description of offenses:

Tax Evasion

**TO THE DEFENDANT:** You should appear with **your attorney** at the time and place given
above. Failure to appear will result in the issuance of a warrant for your arrest. If you are unable
to afford an attorney and wish the court to appoint one for you, please telephone Deputy Clerk
Lisa Belpedio at (508) 929-9905 or (617) 748-4446 as soon as possible.

                                        TIMOTHY S. HILLMAN,
                                        Magistrate Judge

Dated: June 17, 2011                    /s/ Lisa Belpedio
                                        Lisa Belpedio
                                        Deputy Clerk
                                        (508) 929-9905/(617) 748-4446

**\*\*\*PLEASE REPORT TO PRETRIAL SERVICES,** 1rstfloor, 1 Courthouse Way, Boston,
MA, **2 hours** before you are scheduled to appear before the Magistrate Judge for the purpose of
a pretrial interview. **You must have two forms of ID to get into the building.**

## NOTICE AND DEMAND FOR LAWFUL MONEY

Be it now known to any and all parties forevermore that I am David Lynwood (Me) and the PERSON know to others as DAVID TOPPIN, DAVID L. TOPPIN, DAVID LYNWOOD TOPPIN, David Lynwood TOPPIN, have made, and still do make, my demand for lawful money: now, *ab initio* and *nunc pro tunc* (fraud by omission) for any and all dealings and transactions. This demand is made pursuant to law that binds all parties who are under and obligated to recognize the remedy found in Section 16 of the Federal Reserve Act of 1913, now codified at Title 12 United States Code §411. This demand renders Me, my substance, and my exclusively held claims and possessions, and any other property or belongings held by me excepted, immune, and apart from the claim(s) of any parties who bring debt action *in assumpsit* (aka national debt/government debt as money) against Me and mine from within the false and presumptive notion that I am an admitted and volunteer signature endorser of the Federal Reserve's private credit.

Notwithstanding any other provision of law or contractual obligations: NO contract, nor shall any provision thereof, be construed to act or operate in any way or manner to eliminate, dimisnish, supersede, or otherwise modify any provision contained within this Notice and Demand. This Notice and Demand is now on and for the lawful record and is within the "exclusive original cognizance" of the United States by and through the Judiciary Act of 1789 Chapter 20, Page 77 'savings to suitors' in diversity of citizenship [Title 28 USC §1333] as I am outside the scope of any federal district *suae potestate esse* and in absolute ministerial capacity. Any and all persons claiming to preside, act or operate from that realm are duly advised.

By: *David Lynwood*

State of Massachusetts,   }
                          }  ss:
County of Worcester       }

On this 26 day of May, 2013, before me, the undersigned authority, a Notary Public in and for the State of Massachusetts, and the above written county, I do hereby claim and notarize the above named party appeared before me, was identified and is known to me, and signed and affirmed before me this Notice and Demand.

*Karen F. Mattus*

KAREN F. MATTUS
Notary Public
Commonwealth of Massachusetts
My Commission Expires June 2, 2017

*The Commonwealth of Massachusetts*

**William Francis Galvin**
**Secretary of the Commonwealth**

---

C-1

## G 1672775

Boston, Massachusetts                    June 4, 2013

*I hereby certify that*

### Karen F. Mattus

*was appointed and commissioned on* June 2, 2010          *, and on*

July 21, 2010          *duly received the qualiifying oaths thereunder,*
*as a* **Notary Public** *for the Commonwealth of Massachusetts, for the*
*terms of seven years from the date of said commission; that as such*
*Notary Public, said appointee is by law authorized to administer oaths, to*
*take depositions and to take acknowledgements of deeds or*
*conveyances of lands, tenements or heriditaments and other*
*instruments throughout the Commonwealth to be recorded according to*
*law; and that to said appointees acts and attestations, as such, full faith*
*and credit are and ought to be given, in and out Court.*

*In testimony of which,* *I have hereunto affixed the*

*Great Seal of the Commonwealth*



*on the first date above written*

*?*

**William Francis Galvin**
**Secretary of the Commonwealth**

# RETURN OF SERVICE

**State of Massachusetts**                    **County of Suffolk**                    **Pending Court**

Case Number: _____

Petitioner:
**David Toppin**

vs.

Respondent:
**Federal Reserve Bank of Boston**

For:
David Toppin
4 LaChance Street
Gardner, MA  01440

Received by ServeBoston.com on the 31st day of May, 2013 at 1:22 pm to be served on **Federal Reserve Bank of Boston, 600 Atlantic Ave., Boston, MA 02210**.

I, Dean Devito, do hereby affirm that on the **4th day of June, 2013** at **4:08 pm, I:**

served by delivering a true copy of the NOTICE AND DEMAND FOR LAWFUL MONEY with the date and hour of service endorsed thereon by me, to: **Mary H. Bickerton** as **Assistant Vice President** at the address of: **600 Atlantic Avenue, Boston, MA 02210**, who stated they are authorized to accept service for **Federal Reserve Bank of Boston**, and informed said person of the contents therein, in compliance with state statutes.

I declare under the pains and penalties of perjury under the laws of the United States of America that I am a Process Server in good standing, a disinterested person over the age of 18, and that the foregoing information contained within this Affidavit of Service is true and correct.

_____

**Dean Devito**
Process Server

**ServeBoston.com**
**71 Commercial Street**
**Suite 224**
**Boston, MA 02109-1320**
**(617) 671-7705**
Our Job Serial Number: SVB-2013000084

Service Fee: $55.00

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5m

**ServeBoston.com**
**71 Commercial Street**
**Suite 224**
**Boston, MA 02109-1320**
**Phone: (617) 671-7705**
**Fax: (888) 259-9276**

# INVOICE

**Invoice #SVB-2013000084**
**6/5/2013**



David Toppin
4 LaChance Street
Gardner, MA 01440

**Case Number: Suffolk**

Petitioner:
**David Toppin**

Respondent:
**Federal Reserve Bank of Boston**

Received: 5/31/2013   Served: 6/4/2013 4:08 pm  BUSINESS SERVE
To be served on: Federal Reserve Bank of Boston

### ITEMIZED LISTING

| Line Item | | Quantity | Price | Amount |
|---|---|---|---|---|
| Service Fee (Local) | | 1.00 | 55.00 | 55.00 |
| TOTAL CHARGED: | | | | $55.00 |
| 06/04/2013 | Pre-Payment | | | 55.00 |
| **BALANCE DUE:** | | | | **$0.00** |

**Thank you for your business!**

Thank You For Choosing ServeBoston.com For Your Service of Process Needs!

All Invoices Are Due Upon Receipt. Please enclose a copy of this invoice with your payment.

If You Are Happy With Our Service, And Would Like To Let People Know, We Will Soon Be Posting Testimonials
On Our Web Site. We'd Love To Hear From You! You May Send an Email To: testimonial@serveboston.com -
Please Sign The Email The Way You Would Like It To Appear Online.

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5m



DAVID L TOPPIN
465 SALISBURY STREET
HOLDEN, MA 01520-1425

176
54-142/117
BRANCH 6

Pay to the Order of _____ Steven Bisson _____

5/30/13

$ 55-

Fifty five _____ Dollars

Connecticut
River Bank NA

For Demand for lawful money _____ David L Reynolds
Demand for lawful money 12 USC 411.

⑆011170112411⑆ 69 1129 3⑈ 0176

095110459          95 OCT 13 PM 4: 17          BOOK 6744   PAGE 969

EL PAS. COUNTY CLERK & RECORDER



TERRITORY 1861          STATE 1876

DEPARTMENT OF PERSONNEL

## DIVISION OF

# STATE ARCHIVES
# AND
# PUBLIC RECORDS

*I Hereby Certify that the annexed copy (or each of the annexed copies) is a true copy of a record in the legal custody of the State Archivist of Colorado, and is filed among the records of*

COLORADO TERRITORY LEGISLATIVE ASSEMBLY, TERRITORY OF COLORADO
deposited therein

GENERAL LAWS, JOINT RESOLUTIONS, MEMORIALS, AND PRIVATE ACTS, PASSED AT THE
FIRST SESSION OF THE LEGISLATIVE ASSEMBLY, DENVER, COLORADO TERRITORY,
SEPTEMBER 9, 1861.

TITLE PAGE, PAGES 20, 21, 2 [SIC], AND 35.
TOTAL 5 PAGES.



STATE ARCHIVIST OF COLORADO

OCTOBER 4, 1995
DATE

Office of County Clerk and Recorder
El Paso County, State of Colorado
Certified to be a full, true and Correct
Copy, as issued in my office.
095110459 Book 6744 Page 969
Date. . . . . . 10-20-12 . . . . .
County Clerk: Wayne W. Williams
El Paso County, Colorado
By . . . . . . . . . . . . . . Deputy

GENERAL LAWS, JOINT RESOLUTIONS, MEMORIALS

AND PRIVATE ACTS,

PASSED AT THE FIRST SESSION

OF THE

# LEGISLATIVE ASSEMBLY

OF THE

## TERRITORY OF COLORADO,

BEGUN AND HELD AT

DENVER, COLORADO TER., SEPT. 9th, 1861.

TOGETHER WITH

THE DECLARATION OF INDEPENDENCE,

### THE CONSTITUTION OF THE UNITED STATES,

AND THE

### ORGANIC ACT OF THE TERRITORY.

PUBLISHED BY AUTHORITY.

DENVER:
THOS. GIBSON, COLORADO REPUBLICAN AND HERALD OFFICE,
1861.

3RARY
COURT
AL DISTRICT

BOOK 6744   PAGE 971

LAW LIBRARY
DISTRICT COURT
SECOND JUDICIAL DISTRICT

# AMENDMENTS TO THE CONSTITUTION.

## ARTICLE I.

*The free exercise of religion, freedom of speech, of the press, of the right to peaceably assemble and to petition, &c. secured to the people.*

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble and petition the government for a redress of grievances.

## ARTICLE II.

*Right to bear arms.*

A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed.

## ARTICLE III.

*Of quartering soldiers in time of peace.*

No soldier shall, in time of peace, be quartered in any house without the consent of the owner; nor in time of war, but in a manner to be prescribed by law.

## ARTICLE IV.

*No search warrant to issue except on oath.*

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## ARTICLE V.

*Capital and infamous crimes—proceedings.*

No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled, in any criminal case, to be a witness against himself; nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation.

## ARTICLE VI.

*Right of the accused in criminal cases.*

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

## ARTICLE V

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

## ARTICLE V

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## ARTICLE

The enumeration in the constitution of certain rights shall not be construed to deny or disparage others retained by the people.

## ARTICLE

The powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

## ARTICLE

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State.

## ARTICLE X

1. The electors shall meet in their respective States, and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same State as themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and

jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defence.

## ARTICLE VII.

In suits at common law, where the value in controversy, shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

## ARTICLE VIII.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## ARTICLE IX.

The enumeration in the constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

## ARTICLE X.

The powers not delegated to the United States by the constitution, nor prohibited by it to these States, are reserved to the States respectively, or to the people.

## ARTICLE XI.

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State.

## ARTICLE XII.

1. The electors shall meet in their respective States and vote by ballot for President and Vice President, one of whom, at least, shall not be an inhabitant of the same State as themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice President; and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to

## AMENDMENTS TO THE CONSTITUTION.

**2**

the seat of government of the United States, directed to the President of the Senate; the President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates, and the votes shall then be counted; the person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of electors appointed; and if no person have such majority, then from the persons having the highest numbers, not exceeding three, on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by States, the representation from each State having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the States, and a majority of all the States shall be necessary to a choice. And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March following, then the Vice President shall act as President, as in the case of the death or other constitutional disability of the President.

*Of the Vice President.*

2. The person having the greatest number of votes as Vice President, shall be Vice President, if such number be a majority of the whole number of electors appointed; and if no person have a majority, then from the two highest numbers in the list, the Senate shall choose the Vice President: a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice.

3. But no person constitutionally ineligible to the office of President, shall be eligible to that of Vice President of the United States.

## ARTICLE XIII.

*In what cases persons forfeit their citizenship.*

If any citizen of the United States shall accept, claim, receive or retain any title of nobility or honor, or shall, without the consent of Congress, accept and retain any present, pension, office or emolument of any kind whatever, from any emperor, king, prince, or foreign power, such person shall cease to be a citizen of the United States, and shall be incapable of holding any office of trust or profit under them, or either of them.

[NOTE.—The 11th article of the amendments to the Constitution was proposed at the second session of the third Congress; the 12th article, at the first session of the eighth Congress; and the 13th article, at the second session of the eleventh Congress.]



BOOK
6744

lawful for the clerk
until the following
y two o'clock in the
awful for said clerk
f the ensuing week,
ies, and recognized
me; and in case of
i, actions, motions,
continued over until
all jurors, witnesses
nder the same obli-
ion such adjourned
: day first appointed.
and be in force from

been made for the violation of the first section of this
act, can establish by good and competent witnesses that
spirituous liquors or wine were obtained from him de-
ceitfully, or a man who did not wear, at the time of
obtaining such spirituous liquors, or wine, the uniform
or other badge which distinguish him from a civilian,
and that he did not know such person to be a soldier,
such person so complained against shall not be liable
for the penalties enumerated in this act.

SEC. This act shall take effect and be in force from
and after its passage.

Approved, September 28th, 1861.

Liquors to Soldiers.
use of Representatives

hall sell, exchange,
ous liquors or wine
lates serving within
uch supplies as may
United States army
partment, such per-
io district court or
urt of this Territory
risoned for a period
iall forfeit and pay
schools, a sum not
tion of such person
risoned for a period
and pay for the use
um not exceeding

## AN ACT

### Adopting the Common Law of England.

*Be it enacted by the Council and House of Representatives
of Colorado Territory:*

SECTION 1. That the Common Law of England, so
far as the same is applicable and of a general nature,
and all acts and statutes of the British Parliament,
made in aid of or to supply the defects of the Common
Law, prior to the fourth year of James the First, (except-
ing the second section of the sixth chapter of forty-third
Elizabeth, the eighth chapter of thirteenth Elizabeth,
and ninth chapter of thirty-seventh Henry Eighth,) and
which are of a general nature, and not local to that
Kingdom, shall be the rule of decision, and shall be
considered as of full force until repealed by legislative
authority.

SEC. 2. This act shall be in force from and after its
passage.

Approved, October 11th, 1861

## AN ACT

### To organize the Militia.

*Be it enacted by the Council and House of Representatives
of Colorado Territory:*

SECTION 1. Every able bodied male citizen of Colo-
rado between the ages of eighteen and forty-five years,
except those who are by this act exempt therefrom,
shall be subject and liable to perform military duty as
a soldier, to uphold the constitution and laws of the
United States and the Organic Act and laws of this
Territory, according to the terms and provisions of this
act. And every citizen above forty-five years of age

een mustered into
iff the uniform and
al designated troops
eceive shall obtain
any other person, it
iff, or any police of-
on complaint being
ed such person, and
nding officer of the
pply for his defense,
iom complaint has

Robert C. Balink  El Paso Cty,CO 203290555
12/18/2003      02:32
Doc    $0.00    Page
Rec   $20.00    1 of  4

STATE OF MINNESOTA                    IN JUSTICE COURT

COUNTY OF SCOTT                       TOWNSHIP OF CREDIT RIVER
                                      MARTIN V. MAHONEY, JUSTICE

First National Bank of Montgomery,

                              Plaintiff,

vs.                           JUDGMENT AND DECREE

Jerome Daly,                  Defendant.

The above entitled action came on before the Court and a Jury
of 12 on December 7,1968 at 10:00 A.M. Plaintiff appeared by its
President Lawrence V. Morgan and was represented by its Counsel
Theodore R. Mellby. Defendant appeared on his own behalf.

A Jury of Talesmen were called, impanneled and sworn to try
the issues in this Case. Lawrence V. Morgan was the only witness
called for Plaintiff and Defendant testified as the only witness in
his own behalf.

Plaintiff brought this as a Common Law action for the recovery
of the possession of Lot 19, Fairview Beach, Scott County,Minn.
Plaintiff claimed title to the Real Property in question by foreclosure
of a Note and Mortgage Deed dated May 8,1964 which Plaintiff claimed
was in default at the time foreclosure proceedings were started.

Defendant appeared and answered that the Plaintiff created
the money and credit upon its own books by bookeeping entry as the
consideration for the Note and Mortgage of May 8,1964 and alleged
failure of consideration for the Mortgage Deed and alleged that the
Sheriff's sale passed no title to Plaintiff.

The issues tried to the Jury were whether there was a lawful
consideration and whether Defendant had waived his rights to complain
about the consideration having paid on the Note for almost 3 years.

Mr. Morgan admitted that all of the money or credit which was
used as a consideration was created upon their books, that this was
standard banking practice exercised by their bank in combination
with the Federal Reserve Bank of Minneapolis, another private Bank,
further that he knew of no United States Statute or Law that gave
the Plaintiff the authority to do this. Plaintiff further claimed
that Defendant by using the ledger book created credit and by paying

on the Note and Mortgage waived any right to complain about the
Consideration and that Defendant was estopped from doing so.
At 12:15 on December 7,1968 the Jury returned a unaminous
verdict for the Defendant.

Now therefore, by virtue of the authority vested in me pursuant
to the Declaration of Independence, the Northwest Ordinance of 1787,
the Constitution of the United States and the Constitution and laws
of the State of Minnesota not inconsistent therewith;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That Plaintiff is not entitled to recover the possession
of Lot 19, Fairview Beach, Scott County, Minnesota according to
the Plat thereof on file in the Register of Deeds office.

2. That because of failure of a lawful consideration the Note
and Mortgage dated May 8,1964 are null and void.

3. That the Sheriff's sale of the above described premises
held on June 26,1967 is null and void, of no effect.

4. That Plaintiff has no right, title or interest in said
premises or lien thereon, as is above described.

5. That any provision in the Minnesota Constitution and any
Minnesota Statute limiting the Jurisdiction of this Court is repugnant
to the Constitution of the United States and to the Bill of Rights
of the Minnesota Constitution and is null and void and that this
Court has Jurisdiction to render complete Justice in this Cause.

6. That Defendant is awarded costs in the sum of $75.00 and
execution is hereby issued therefore.

7. A 10 day stay is granted.

8. The following memorandum and any supplemental memorandum
made and filed by this Court in support of this Judgment is hereby
made a part hereof by reference.

BY THE COURT

Dated December 9,1968

MARTIN V. MAHONEY
JUSTICE OF THE PEACE
CREDIT RIVER TOWNSHIP
SCOTT COUNTY, MINNESOTA

MEMORANDUM

The issues in this case were simple. There was no material dispute on the facts for the Jury to resolve.

Plaintiff admitted that it, in combination with the Federal Reserve Bank of Minneapolis, which are for all practical purposes, because of there interlocking activity and practices, and both being Banking Instutions Incorporated under the Laws of the United States, are in the Law to be treated as one and the same Bank, did create the entire $14,000.00 in money or credit upon its own books by bookeeping entry. That this was the Consideration used to support the Note dated May 8,1964 andthe Mortgage of the same date. The money and credit first came into existance when they created it. Mr. Morgan admitted that no United States Law or Statute existed which gave him the right to do this. A lawful consideration must exist and be tendered to support the Note. See Anheuser-Busch Brewing Co. v. Emma Mason, 44 Minn. 318, 46 N.W. 558. The Jury found there was no lawful consideration and I agree. Only God can created something of value out of nothing.

Even if Defendant could be charged with waiver or estoppel as a matter of Law this is no defense to the Plaintiff. The Law leaves wrongdoers where it finds them. See sections 50, 51 and 52 of Am Jur 2d "Actions" on page 584 -"no action will lie to recover on a claim based upon, or in any manner depending upon, a fraudulent, illegal, or immoral transaction or contract to which Plaintiff was a party.

Plaintiff's act of creating credit is not authorized by the Constitution and Laws of the United States, is unconstitutional and void, and is not a lawful consideration in the eyes of the Law to support any thing or upon which any lawful rights can be built.

Nothing in the Constitution of the United States limits the Jurisdiction of this Court, which is one of original Jurisdiction with right of trial by Jury guaranteed. This is a Common Law Action. Minnesota cannot limit or impair the power of this Court to render Complete Justice between the parties. Any provisions in the Constitution and laws of Minnesota which attempt to do so are repugnant to the

Constitution of the United States and *are* void. No question as to the Jurisdiction of this Court was raised by either party at the trial. Both parties were given complete liberty to submit any and all facts and law to the Jury, at least in so far as they saw fit.

No complaint was made by Plaintiff that Plaintiff did not recieve a fair trial. From the admissions made by Mr. Morgan the path of duty was made direct and clear for the Jury. Their Verdict could not reasonably have been otherwise. Justice was rendered completely and without denial, promptly and without delay, freely and without purchase, conformable to the laws in this Court on December 7,1968.

BY THE COURT

December 9,1968

MARTIN V. MAHONEY
JUSTICE OF THE PEACE
CREDIT RIVER TOWNSHIP
SCOTT COUNTY, MINNESOTA

Note: It has never been doubted that a Note given on a Consideration which is prohibited by law is void. It has been determined, independent of Acts of Congress, that sailing under the license of an enemy is illegal. The emmission of Bills of Credit upon the books of these private Corporations, for the purposes of private gain is not warranted by the Constitution of the United States and is unlawful. See Craig v. Mo. 4 Peters Reports 912. This Court can tread only that path which is marked out by duty.      M.V.M.

ROBERT C. "BOB" BALINK   El Paso County, CO
02/05/2007  10:50:49 AM
Doc - $0.00    Page
Rec - $6.00    1 of 1   207015932

ABOLITION OF HOME OWNERS' LOAN CORPORATION

For dissolution and abolishment of Home Owners' Loan Corporation, referred to in this section, by act June 30, 1953, ch. 170, § 21, 67 Stat. 126, see note set out under section 1463 of this title.

§ 395. Federal reserve banks as depositaries, custodians and fiscal agents for Commodity Credit Corporation

The Federal Reserve banks are authorized to act as depositaries, custodians, and fiscal agents for the Commodity Credit Corporation.

(July 16, 1943, ch. 241, § 3, 57 Stat. 566.)

TRANSFER OF FUNCTIONS

Administration of program of Commodity Credit Corporation transferred to Secretary of Agriculture by Reorg. Plan No. 3 of 1946, § 501, eff. July 16, 1946, 11 F.R. 7877, 60 Stat. 1100. See Appendix to Title 5, Government Organization and Employees.

EXCEPTIONS FROM TRANSFER OF FUNCTIONS

Functions of Corporations of Department of Agriculture, boards of directors and officers of such corporations, Advisory Board of Commodity Credit Corporation, and Farm Credit Administration or any agency, officer or entity of, under, or subject to supervision of Administration were excepted from functions of officers, agencies, and employees transferred to Secretary of Agriculture by Reorg. Plan No. 2 of 1953, § 1, eff. June 4, 1953, 18 F.R. 3219, 67 Stat. 633, set out in the Appendix to Title 5, Government Organization and Employees.

SUBCHAPTER XII—FEDERAL RESERVE NOTES

§ 411. Issuance to reserve banks; nature of obligation; redemption

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

(Dec. 23, 1913, ch. 6, § 16 (par.); 38 Stat. 265; Jan. 30, 1934, ch. 6, § 2(b)(1), 48 Stat. 337; Aug. 23, 1935, ch. 614, title II, § 203(a), 49 Stat. 704.)

REFERENCES IN TEXT

Phrase "hereinafter set forth" is from section 18 of the Federal Reserve Act, act Dec. 23, 1913. Reference probably means as set forth in sections 17 et seq. of the Federal Reserve Act. For classification of these sections to the Code, see Tables.

CODIFICATION

Section is comprised of first par. of section 16 of act Dec. 23, 1913. Pars. 2 to 4, 5, and 6, 7, 8 to 11, 13 and 14 of section 16, and pars. 15 to 18 of section 16 as added June 21, 1917, ch. 32, § 8, 40 Stat. 238, are classified to sections 412 to 414, 415, 416, 418 to 421, 360, 248-1, and 467, respectively, of this title.

Par. 12 of section 16, formerly classified to section 422 of this title, was repealed by act June 26, 1934, ch. 756, § 1, 48 Stat. 1225.

AMENDMENTS

1934—Act Jan. 30, 1934, struck out from last sentence provision permitting redemption in gold.

CHANGE OF NAME

Section 203(a) of act Aug. 23, 1935, changed name of Federal Reserve Board to Board of Governors of the Federal Reserve System.

CROSS REFERENCES

Gold coinage discontinued, see section 5112 of Title 31, Money and Finance.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 348, 420, 421, 467 of this title.

§ 412. Application for notes; collateral required

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under the provisions of sections 342 to 347, 347c, 347d, and 372 of this title, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of sections 348a and 353 to 359 of this title, or bankers' acceptances purchased under the provisions of said sections 348a and 353 to 359 of this title, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under sections 348a and 353 to 359 of this title. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of Federal Reserve banks.

(Dec. 23, 1913, ch. 6, § 16 (par.), 38 Stat. 265; Sept. 7, 1916, ch. 461, 39 Stat. 754; June 21, 1917, ch. 32, § 7, 40 Stat. 236; Feb. 27, 1932, ch. 58, § 3, 47 Stat. 57; Feb. 3, 1933, ch. 34, 47 Stat. 794; Jan. 30, 1934, ch. 6, § 2(b)(2), 48 Stat. 338; Mar. 6, 1934, ch. 47, 48 Stat. 398; Aug. 23, 1935, ch. 614, title II, § 203(a), 49 Stat. 704; Mar. 1, 1937, ch. 20, 50 Stat. 23; June 30, 1939, ch. 256, 53 Stat. 991; June 30, 1941, ch. 264, 55 Stat. 395; May 25, 1943, ch. 102, 57 Stat. 85; June 12, 1945,